UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDICE GATLIN-WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-cv-2657-KJN<br><br><br><br>ORDER |

Plaintiff Candice Gatlin-Williams seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 14, 15.) No optional reply brief was filed.

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and all parties consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). (ECF Nos. 7, 8.)

1

I.  BACKGROUND

Plaintiff was born on April 23, 1971; has at least a high school education; can communicate in English; and previously worked as a shoe sales representative and retail manager.[2]  (Administrative Transcript ("AT") 28-29.)  On May 23, 2014, plaintiff applied for DIB, alleging that her disability began on August 1, 2013.  (AT 15.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on December 13, 2016.  (AT 15, 37-80.)  The ALJ subsequently issued a decision dated February 13, 2017, determining that plaintiff had not been under a disability as defined in the Act, from August 1, 2013, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 15-31.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 24, 2017.  (AT 1–6.)  Plaintiff subsequently filed this action on December 21, 2017, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ erroneously discounted the opinion of plaintiff's examining physician, Dr. Frank Fine; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ erred in failing to find several of plaintiff's impairments severe.[3]

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raised those issues in a somewhat different order.

2

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff met the insured

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

status requirements of the Act for purposes of DIB through December 31, 2018. (AT 17.) At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 1, 2013, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: obesity, degenerative joint disease of the knees, degenerative disc disease of the cervical and lumbar spine, and sickle cell trait. (Id.) However, at step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 21.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit for six hours out of an eight-hour day, and can stand and walk for four hours out of an eight-hour day. The claimant requires the use of a cane for long periods of ambulation, and should wear her supportive knee brace. The claimant cannot climb ladders, ropes, or scaffolding, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to concentrated cold, concentrated exposure to wetness or humidity, concentrated exposure to excessive vibration, concentrated exposure to hazardous machinery, or concentrated exposure to unprotected heights.

(AT 23.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 28.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 29-30.) Thus, the ALJ concluded that plaintiff had not been disabled from August 1, 2013, her alleged disability onset date, through February 13, 2017, the date of the ALJ's decision. (AT 30-31.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ erroneously discounted the opinion of plaintiff's examining physician, Dr. Frank Fine*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking,

a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff retained Dr. Fine as a consultative examiner. After personally examining plaintiff, Dr. Fine prepared a report dated October 14, 2015, stating *inter alia* that plaintiff could not sit or stand for more than 20-30 minutes at a time, lift more than 10 pounds from the waist up, walk over uneven ground, or climb stairs. Dr. Fine noted that he doubted whether plaintiff could return to the workforce in the open job market and that he had "encouraged the patient to apply for permanent Social Security disability." (AT 476-79.) Because Dr. Fine's opinion was

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

contradicted by other opinions in the record, the ALJ was required to provide specific and legitimate reasons to discount his opinion. As discussed below, the court concludes that the ALJ properly discharged that obligation.

The ALJ reasonably relied on the opinion of consultative examiner and board-certified orthopedist, Dr. Dale van Kirk. (AT 25, 27.) Dr. van Kirk personally examined plaintiff on October 25, 2014, and opined that plaintiff could stand and/or walk for 6 hours out of an 8-hour day; could sit without limitations; needed to use her hinged knee brace mainly when she was out and about, and not at home; could lift and carry 20 pounds occasionally and 10 pounds frequently; could only perform occasional postural activities; and could not work in an extremely cold and/or damp environment. (AT 471-75.) Because Dr. van Kirk personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

The ALJ also legitimately relied on the opinion of state agency physician Dr. Jonathan Nordlicht, who reviewed plaintiff's records and opined on February 7, 2015, that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand/walk for a total of 4 hours; could sit for a total of about 6 hours; had occasional postural limitations; and had to avoid concentrated exposure to vibration and hazards. (AT 25, 27, 102-04.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

To be sure, plaintiff points to portions of her treatment records that are potentially consistent with Dr. Fine's opinion. On the other hand, the ALJ's decision also referenced portions of plaintiff's treatment records that are more consistent with the opinions of Dr. van Kirk and Dr. Nordlicht. On such an ambiguous record, the court defers, as it must, to the ALJ's findings, which are based on substantial evidence, as noted above.

////

////

2. *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff contends that the ALJ erred by discounting plaintiff's testimony regarding her symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

7

In this case, the ALJ performed a thorough analysis of plaintiff's credibility, ultimately concluding that there was significant evidence of exaggeration and inconsistencies in the record. As the ALJ explained:

> Testing in February of 2015 indicated the claimant had a large number of somatic complaints that suggested a psychological component as she reported a "high degree of symptoms that are unusual and rarely reported by others, even by people with serious medical illness." Exh. 11F at 16. This was consistent with the claimant's performance at the Consultative Examination when she was able to perform many of the tasks she had been, apparently, unable to perform only months before. Ex. 9F; 6F. The claimant alleged she was in severe pain which completely interfered with her ability to walk but that was not consistent with driving herself to the appointment and walking to the doctor's office without assistance. Ex. 11F at 23. The claimant alleged during an examination that her pain was a 7 on a scale of one to ten but "there was no overt indication she was experiencing pain." Ex. 11F at 16. The examiner noted no significant difference when he interviewed the claimant months later. Ex. 11F at 23. The claimant complaint of "an abnormal degree of daytime sleepiness" but a doctor who interviewed her for more than six hours observed no signs of sleepiness during two separate interviews. Exh. 11F at 16, 23. The claimant reported a high degree of depression in her daily life and when examined, but there were no overt signs of depression when interviewed (Ex. 11F at 16), and the claimant has not been given medication for any psychiatric symptoms. The claimant does experience some limitations but only to the extent described in the residual functional capacity above.

(AT 28.) In sum, the ALJ's credibility analysis was supported by the record and by the proper analysis.

3. *Whether the ALJ erred in failing to find several of plaintiff's impairments severe*

Finally, the court finds no prejudicial error at step two of the sequential disability evaluation with respect to the impairments that the ALJ found were not severe.

As for plaintiff's mental health, plaintiff primarily relies on a finding by examining psychologist, Dr. John Hupka, who noted, with respect to one of the many tests he administered, that: "[i]n my current interview with her I administered the MCMI-III. She produced a valid profile, and that test indicates significant depression as a chronic characterological condition and with acute exacerbation of depression." (AT 666.) However, plaintiff appears to ignore Dr. Hupka's ultimate mental functional assessment, based on his entire clinical evaluation and all the

8

testing, which found that plaintiff had only mild mental limitations. (AT 660-63.)

The ALJ also properly found based on the evidence in the record that plaintiff's remaining physical impairments of alopecia (loss of hair), gastroesophageal reflux disease, and irritable bowel syndrome were resolved, well controlled with treatment, and/or did not meet the 12-month durational period. (AT 17-21.)

V. CONCLUSION

In sum, the Commissioner's final decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: December 10, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE